# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROY W. KRIEGER,

    Plaintiff,

    v.

UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*

    Defendant.

Civil Action No. 98-1703  (CKK)

## MEMORANDUM OPINION
(January 7, 2008)

This case represents a decades-long dispute between Roy W. Krieger ("Krieger"), an attorney formerly employed by the Department of Justice ("DOJ"), and his former DOJ supervisors Kathlynn G. Fadely ("Fadely") and Gary W. Allen ("Allen").  Currently before the Court are Defendants' [83] Motion for Summary Judgment as to Plaintiff's Privacy Act claim (Count VII), Defendants' [96] Motion to Dismiss or, in the alternative, Motion for Summary Judgment as to Plaintiff's constitutional tort claim (Count VII), and Plaintiff's [72] Motion for Leave to Amend his Complaint to assert a claim under the Federal Torts Claims Act (Count IX). The Court has previously dismissed all other claims brought by Krieger.  *See* [126] Mem. Op. and Order dated March 8, 2005.  After a thorough review of the Parties' submissions and exhibits attached thereto, as well as consideration of all applicable case law and statutory authority, the Court shall GRANT IN PART Defendants' [83] Motion for Summary Judgment, holding the Motion in abeyance with respect to the claim brought under section 552a(e)(7) of the Privacy Act

1

pending further briefing from the Parties, GRANT Defendants' [96] Motion to Dismiss, or in the

alternative, Motion for Summary Judgment, and DENY Plaintiff's [72] Motion for Leave to

Amend his Complaint, for the reasons that follow.

## I. BACKGROUND

*A.    Factual Background*

Krieger was employed as a trial attorney in the Aviation Section of the DOJ from

November 1984 to March 1989.[1]  *See* [86] Pl.'s Stmt. ¶ 1.  In 1986, Krieger was assigned to a

case involving the crash of Delta flight 191 (hereinafter, "Delta litigation"), eventually working

under the supervision of Defendant Fadely.  *Id.* ¶¶ 2, 7.  As part of the litigation, Krieger was

given primary responsibility for the development of a computer graphic reconstruction of the

accident (hereinafter, "Delta video") that was later used as evidence during the Delta trial.  *Id.* ¶

8.  Krieger and Fadely's working relationship was apparently quite strained.  *Id.* ¶ 7.  In

December 1988, prior to the conclusion of the Delta litigation, Krieger informed Fadely and her

supervisor, Defendant Allen, that he was leaving the DOJ to accept employment at a Washington

D.C. law firm.  *Id.* ¶¶ 9-12.  The use of the Delta video and its related technology became an

immediate and sustained point of contention between Krieger and his former supervisors Fadely

---

[1]  The Court begins its discussion of the facts by noting that this Court strictly adheres to
the text of Local Civil Rule 56.1.  *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002)
(district courts need to invoke Local Civil Rule 56.1 before applying it to the case).  Although
discretionary in the text of the Local Civil Rule 56.1, in resolving the present motions on
summary judgment, this Court "assumes that facts identified by the moving party in its statement
of material facts are admitted, unless such a fact is controverted in the statement of genuine
issues filed in opposition to the motion."  LCvR 56.1.  Accordingly, unless contradicted by the
opposing Party, the Court shall cite to either Plaintiff's [83] or [96] Statement of Material Facts
("Pl.'s Stmt.") or Defendants' [83] or [96] Statement of Material Facts ("Defs' Stmt.").  The
Court shall also cite directly to the Parties' pleadings or the record, where appropriate, to provide
additional information not covered in either of the Parties' statements.

and Allen.

The DOJ contracted with Z-Axis Corporation ("Z-Axis") to produce the Delta video, expending approximately $200,000 for its development.  *See* [96] Pl.'s Stmt. ¶ 3.  Although it was presented at the Delta trial in a video tape format, Z-Axis also produced the Delta video on laser discs, which required some additional programming to operate correctly.[2]  *Id.* ¶ 3; [96] Defs' Stmt. ¶ 4.  Shortly before his departure, Krieger wrote a memorandum to Allen wherein he asked to keep a copy of the Delta video on a laser disc.  *See* [96] Defs.' Stmt. ¶ 5.  Allen denied his request and indicated that the Delta video laser discs "were not generated for [his] personal use, nor [could he] accept them gratis from a government contractor." *Id.*  On March 30, 1989, Krieger reasserted his request and indicated that he would obtain the Delta video laser disc from Z-Axis "without the consent of the Department." *Id.*  On June 14, 1989, Allen advised Krieger by letter that he had no authority to release anything other than a video tape version of the Delta video.  *Id.* ¶ 6.  Two weeks later, Krieger submitted a Freedom of Information Act claim to obtain a copy of the Delta video on laser disc.  *Id.* ¶ 7.

Allen communicated with Al Treibitz ("Treibitz"), President of Z-Axis, on January 22, 1990, concerning Krieger's request for a laser disc copy of the Delta video.  *Id.* ¶ 8.  Allen described the conversation in a subsequent email:

> I've talked to [Treibitz] and after some discussions have concluded that I cannot instruct him not to make a video disc from a public-domain DL videotape if Al wants to do it.  He [says] that the control program necessary to run the disc is a simple, non-proprietary one . . . .  He claimed such programs are [] Basic programs which are easily obtainable on the open market.  I told him that while I didn't like

---

[2] To the extent the Parties disagree as to whether the programming necessary to place the Delta video onto laser discs required the use of proprietary software or operations developed for purposes of the Delta litigation, the Court finds the dispute immaterial to the instant Motions.

3

> this, I could not think of a way to stop what [Krieger] was proposing to do so long
> as it was essentially the same as Fred Schmuck walking in with a FOIA-obtained
> videotape from the disc and saying, '[m]ake me a demo disc.'  Treibitz claimed
> that's all it would be.

Defs.' Mot. to Dismiss or for Summ. J. Ex. B at 9 (Email from Allen to unknown recipient dated

Jan. 22, 1990).  That same day, Allen wrote to Krieger indicating that he was free to "create a

laser disc for [his] own use, utilizing existing, publicly-available videotapes to be copied at your

expense onto a disc," and that as long as Krieger did not use "any operating program to run the

disc that was written for the original Delta disc(s)," Allen had no objection to Krieger's use of a

laser disc version of the Delta video.  [96] Defs' Stmt. ¶ 9.

Krieger was scheduled to appear as keynote speaker at the Aviation Insurance

Association Biannual Reception in February 1990, where he planned to use the Delta video laser

disc.  *See* [96] Pl.'s Stmt. ¶ 8.  Although Krieger had previously arranged to have Treibitz join

him as a co-speaker, Treibitz later withdrew as a co-presenter and attended the reception as an

observer only.  *Id.*  According to Krieger, Allen coerced Treibitz into withdrawing as a co-

speaker.  *See* Pl.'s Opp'n to Defs' Mot. to Dismiss or Mot. for Summ. J. at 19-23.  It appears

from the record that Krieger gave the keynote address as planned (and used the laser disc) despite

Treibitz's absence.  *See* [96] Pl.'s Stmt. ¶ 13.

In mid-1990, Krieger applied for positions at the Federal Programs Branch and the offices

of the United States Attorney in Washington D.C. and Minneapolis, Minnesota.  *See* [83] Pl.'s

Stmt. ¶ 40.  Krieger's applications were rejected.  *Id.* ¶ 41.  During discovery in the instant case,

Krieger discovered that his DOJ performance evaluations (called "PARs") were missing from his

official personnel file (called an "OPF").  *Id.* ¶ 42.  Krieger surmises that the PARs must have

4

been missing when he applied for these jobs, and that his applications must have been rejected because of the missing evaluations.  Krieger attributes the loss of his PARs to Defendants.  *See* Pl.'s Opp'n to Defs' Mot. for Summ. J. at 23-27.

In addition to the issues concerning the Delta video and Krieger's missing PARs, Krieger also alleges that Fadely improperly disclosed information about his DOJ employment to others, or otherwise disparaged him after he left the DOJ.  *Id.* at 9-23.  On September 1, 1989, the DOJ issued a Press Release that acknowledged the contributions of the attorneys who had worked on the Delta litigation, including Krieger, who was described as "formerly of the Justice Department" and "of counsel for the government for a portion of the proceedings."  Defs' Mot. for Summ. J. Ex. B at 1-2 (DOJ Press Release).  Fadely had a role in drafting this Press Release, which according to Krieger, improperly disclosed that Krieger had participated in the Delta litigation and left the DOJ, and improperly referred to his title as "of counsel" when it should have been "trial attorney."  *Id.*; Pl.'s Opp'n to Defs' Mot. for Summ. J. at 10.  In late 1989 and early 1990, Fadely wrote to the Editors of the *ABA Journal* and *Business Insurance* to clarify information contained in their respective articles about the Delta litigation.  *See* Def.'s Mot. for Summ. J. Ex. C, D (Fadely's Letters).  According to Krieger, these letters improperly disclosed that he had participated in the Delta litigation and subsequently left his position with the DOJ.  *See* Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 12-13.  In 1991, Krieger accepted a position with the Chicago-based law firm Adler, Kaplan & Begy ("AKB").  Second Am. Compl. ¶ 39.  In mid-1991, Fadely called John Adler ("Adler"), a senior partner of AKB, and stated that she was "surprise[d] and disappoint[ed]" that AKB hired Krieger because "[s]he didn't have very high regard for . . . [Krieger's] efforts in connection with cases that she had worked on."  She also

indicated that Krieger's role in the Delta litigation was "limited," and he was primarily involved with the development of a "computer study for use as a trial exhibit" in that case. *See* Pl.'s Opp'n to Defs.' Mot. for Summ. J. Ex. 1 (Tr. Hearing dated July 9, 1997, *Krieger v. Adler, Kaplan & Begy* (N.D. Ill.)). AKB terminated Krieger and, in subsequent litigation between Krieger and AKB, Adler allegedly indicated that Fadely's statements were a motivating factor in his decision to discharge Krieger. *Id.*

  B.  *Procedural Background*

  Krieger filed a nine-count Complaint on July 8, 1998, against Fadely, the DOJ, and the United States. Counts I through VI raised common law tort claims; Count VII raised a constitutional tort claim; Count VIII asserted a violation of Krieger's rights under the Privacy Act; and Count IX asserted that the United States had acted in a negligent manner in violation of the Federal Tort Claims Act ("FTCA").

  The Attorney General certified that Fadely had acted within the scope of her employment with respect to Counts I through VI, and moved to substitute the United States for Fadely as a defendant. *See* 28 U.S.C. § 2679(d)(1). On October 7, 1998, the Court issued an order directing the substitution. Defendants subsequently filed a Motion to Dismiss all of Krieger's claims, which the Court granted on August 9, 1999, resulting in the dismissal of Krieger's lawsuit in its entirety.

  Krieger appealed the Court's decision to the United States Court of Appeals for the District of Columbia Circuit. On May 5, 2000, the D.C. Circuit issued an opinion affirming the dismissal of eight of the counts, but reversing with respect to Count VIII, the claim arising under the Privacy Act. *See Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000). That single claim

was reinstated and the matter was referred back to this Court for resolution.  *Id.*  With respect to

the common law tort claims against Fadely, the Court of Appeals held that, although Plaintiff

should have had the opportunity to challenge the substitution of the United States for Fadely,

Plaintiff had waived his opportunity by failing to raise any objection to Fadely's certification

prior to the dismissal of his suit.  *Id.* at 135.

On July 7, 2000, this Court issued a scheduling order which required Defendants to file

an answer to the reinstated portion of Plaintiff's complaint no later than July 21, 2000.  That

same Order initiated the discovery period in the case.  *Id.*  Just four days later, however, Krieger

filed a nine-count Amended Complaint that was almost identical to the original.  *See* [27] Am.

Compl.  While some of the factual allegations were different, the Amended Complaint raised the

same six common-law and constitutional tort claims against Fadely.  *See id.* ¶¶ 44-91.

On November 17, 2000, this Court denied Krieger's Motion to Amend.  The Court held

that Krieger's renewed tort claims were barred because the District Court had already considered

the question of whether the United States could properly be substituted for Fadely, and the

Circuit Court had affirmed its decision.  *See Krieger*, 211 F.3d at 136.  The Court also denied

Plaintiff's attempt to amend his FTCA claim (Count IX) against the United States, and dismissed

his Motion for Reconsideration of the Court's dismissal of his constitutional tort claim (Count

VII).  The Court did, however, permit Krieger to amend his Privacy Act claim (Count VIII).  At

that point, Krieger's Privacy Act claim against Fadely was the only surviving claim.

Krieger filed another Motion to Amend his Complaint the following March, this time to

allegedly conform his Complaint to the information produced during discovery (although the

Second Amended Complaint relies on largely the same factual predicates for each of the legal

claims).  *See* [72] Mot. to Am. Compl. & Ex. 1 (Second Am. Compl.).  With this Second

Amended Complaint, Krieger sought to add Allen as a Defendant in Counts II, V, and VII, and

also sought to amend both his Privacy Act (Count VIII) and FTCA (Count IX) claims.

Defendants did not object to allowing Krieger to amend his Privacy Act claims, but did object to

the other proposed amendments.  *See* [74] Defs.' Resp. to Pl.'s Mot. to Amend.  On March 30,

2002, the Court held that it would dismiss Counts II and V if Allen received certification from

the Attorney General that he had acted within the scope of his employment. *See* [92] Mem. Op.

and Order dated March 30, 2002 at 9.  The Court further held that Krieger could not add a First

Amendment claim against Fadely, but that Plaintiff could Amend his Complaint to assert the

claim against Allen (Count VII).  *Id.*  Finally, the Court declined to rule on the Krieger's FTCA

claim (Count IX) until after the Attorney General's certification decision.  *Id.*  On July 1, 2002,

Defendants notified the Court that Allen had received certification, *see* [95] Def.'s Resp. to

Court's Order, and consistent with the Court's March 30, 2002 Order, Counts II and V were

dismissed.

On October 7, 2002, Krieger filed a Motion asking the Court to reconsider its March 30,

2002 Order in two respects.  *See* [106] Pl.'s Mot. to Reconsider.  Krieger sought permission to

amend Counts II and V, and to challenge the Attorney General's certification of Allen.  The

Court ruled that Krieger could challenge Allen's certification, and if certification were ultimately

deemed proper, Krieger would not be permitted to amend Counts II and V.  *See* [112] Order

dated Mar. 31, 2004.  On April 15, 2004, Krieger filed a Motion, opposed by Defendants, asking

the Court to allow additional discovery with respect to the certification.  *See* Pl.'s [114] Mot. to

Stay Briefing Schedule; Defs' [115] Opp'n. to Pl.'s Mot. to Stay Briefing Schedule.  On May 13,

2004, the Court amended the briefing schedule to allow Plaintiff more time to assemble his arguments against Allen's certification, but denied Plaintiff the opportunity to conduct additional discovery.  *See* [116] Order dated May 13, 2004.  In doing so, the Court found that "Plaintiff has already had ample time for discovery in this suit, and was well aware of the management hierarchy of his former employer during that discovery process."  *Id*.

On June 24, 2004, Krieger filed a Motion to Decertify Defendant Allen, arguing that Allen was not acting within the scope of his employment when he worked on the DOJ Press Release described above and when he communicated with Treibitz in 1990 regarding Krieger's request for a Delta video laser disc.  *See* Pl.'s [118] Mot. to Decertify.  The Court denied Krieger's Motion on March 8, 2005, finding that his position was "untenable," and that "[i]n light of the fact that Allen had 'national supervisory authority over all aviation and admiralty related FTCA litigation, Allen's work on an agency press release addressing a judicial determination that the United States was not liable for a plane crash clearly meets the relevant criteria."  [126] Mem. Op. at 12 (citation omitted).  The Court further found that there was no "evidence in Plaintiff's factual assertions that would indicate that any actions undertaken by Defendant Allen with respect to the use of a computer animation, paid for and developed in the course of government litigation for which Allen was responsible, would fall outside of the scope of Allen's employment."  *Id.* at 13. The Court also noted that, following this ruling, there remained just three outstanding issues in the case  – the three Motions addressed in the instant Order and accompanying Memorandum Opinion.  *Id.* at 14 n.3.

## II.  LEGAL STANDARDS

A.      *Motion to Dismiss*

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, unlike resolving a motion under Rule 12(b)(1), a court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations. *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit of all inferences that can be derived from the facts alleged."). While a court must construe the Complaint in the plaintiff's favor, it "need not accept inferences drawn by the plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Comm'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Moreover, the court is not bound to accept the legal conclusions of the non-moving party. *See Taylor v. FDIC*, 132 F.3d 753, 762 (D.C. Cir. 1997). The court is limited to considering facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the court may take judicial notice, and matters of public record. *See E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993). Factual allegations in briefs of memoranda of law may not be considered when deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir. 1994).

B.   *Summary Judgment*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is

entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638

(D.C. Cir. 1994).  Under the summary judgment standard, the moving party "bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those

portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue

of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In response, the opposing

party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers

to interrogatories, and admissions on file,' designate 'specific facts showing that there is a

genuine issue for trial.'" *Id.* at 324

Although a court should draw all inferences from the supporting records submitted by the

nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar

summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  To be

material, the factual assertion must be capable of affecting the substantive outcome of the

litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a

reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d

1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52 (the court must determine

"whether the evidence presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is

merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty

Lobby*, 477 U.S. at 249-50 (internal citations omitted).  "Mere allegations or denials of the

adverse party's pleading are not enough to prevent the issuance of summary judgment."

*Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party "must do more

11

than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

  C.  *Motion for Leave to Amend Complaint*

  Under Federal Rule of Civil Procedure 15(a), a party may amend its pleading once as a matter of course at any time before a responsive pleading is served.  *See* Fed. R. Civ. P. 15(a). Additionally, Rule 15(a) allows a party to amend its pleading to add a new party.  *Id.*; *Wiggins v. Dist. Cablevision, Inc.*, 853 F. Supp. 484, 499 (D.D.C. 1994).  Once a responsive pleading is served, however, a party may amend its complaint only by leave of the court or by written consent of the adverse party.  *Id.*; *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The grant or denial of leave to amend is committed to the sound discretion of the district court.  *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  The court must, however, heed Rule 15's mandate that leave is to be "freely given when justice so requires."  *Id.*; *Caribbean Broad. Sys., Ltd. v. Cable & Wireless PLC*, 148 F.3d 1080, 1083 (D.C. Cir. 1998).  Indeed, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."  *Foman*, 371 U.S. at 182.

  Accordingly, "[a]lthough the grant or denial of leave to amend is committed to a district court's discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies

by [previous] amendments . . . [or] futility of amendment.'" *Firestone*, 76 F.3d at 1208 (quoting

*Foman*, 371 U.S. at 182); *see also Caribbean Broad. Sys.*, 148 F.3d at 1084 (citing *Bank v. Pitt*,

928 F.2d 1108, 1112 (11th Cir. 1991) (holding that a district court's discretion to grant leave to

amend is "severely restricted" by Rule 15's command that such leave "be freely given").

Moreover, "'Rule 15(a) does not prescribe any time limit within which a party may apply to the

court for leave to amend . . . . In most cases[,] delay alone is not a sufficient reason for denying

leave . . . . If no prejudice [to the non-moving party] is found, the amendment will be allowed.'"

*Caribbean Broad. Sys.*, 148 F.3d at 1084 (quoting 6 Charles Alan Wright, Arthur R. Miller &

Mary Kay Kane, Federal Practice & Procedure: Civil 2d § 1488, at 652, 659, 662-69 (1990 &

Supp. 1997)).   However, the Court may deny as futile a motion to amend a complaint when the

proposed complaint would not survive a motion to dismiss.  *James Madison*, *Ltd. v. Ludwig*, 82

F.3d 1085, 1099 (D.C. Cir. 1996); *see also* 3 Moore's Federal Practice § 15.15[3] (3d ed. 2000)

("An amendment is futile if it merely restates the same facts as the original complaint in different

terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could

not withstand a motion to dismiss.").

## III.  DISCUSSION

A.      *Privacy Act Claim (Count VIII)*

The Privacy Act of 1974 regulates the collection, maintenance, use, and dissemination of

an individual's personal information by agencies located within the federal government.  *See* 5

U.S.C. § 552a(e).  The Act "gives agencies detailed instructions for managing their records and

provides for various sorts of civil relief to individuals aggrieved by failures on the Government's

part to comply with the requirements."  *Doe v. Chao*, 540 U.S. 614, 618 (2004).  A plaintiff in an

13

action under the Privacy Act bears the burden of proof for each element of his claim.  *See Mervin v. FTC*, 591 F.2d 821, 827 (D.C. Cir. 1978) (except when a plaintiff seeks *disclosure* of records, "the ordinary rule imposing the burden of proof on the plaintiff should apply").

In the instant case, Krieger alleges that Defendants committed seven violations of the Privacy Act:  (i) disclosing records without his consent in violation of section 552a(b); (ii) failing to maintain records in violation of section 552a(e)(5); (iii) disseminating records without making reasonable efforts to assure that such records were accurate in violation of section (e)(6); (iv) maintaining records related to Krieger's First Amendment activities in violation of section (e)(7); (v) failing to publish notice of the existence and character of its records in violation of section (e)(4); (vi) maintaining information in its records that is not relevant and necessary in violation of section (e)(1); and (vii) failing to establish rules of conduct and appropriate safeguards for information in violation of sections (e)(9) and (e)(10).  *See* Second Am. Compl. ¶¶ 88-103.  As a result of these violations, Krieger seeks damages in the amount of $75,000, plus costs, pursuant to 5 U.S.C. §§ 552a(g)(1)(C), (g)(4)(B).  *Id.* ¶ 115

### 1.   Improper Disclosure of Records

Krieger argues that the DOJ violated the Privacy Act's prohibitions on unauthorized disclosure of records under section 552a(b), which provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains."  5. U.S.C. § 552a(b).  To recover damages for an improper disclosure under the Privacy Act, a plaintiff must prove that: (1) the information in question is a "record" contained within "a system of records;" (2) the agency improperly

"disclosed" the information; (3) an adverse impact resulted from the disclosure; and (4) the agency's disclosure was willful or intentional. *See Barry v. Dep't of Justice*, 63 F. Supp.2d 25, 27 (D.D.C. 1999). If these elements are shown, a plaintiff may recover monetary damages by further establishing that "actual damages" were sustained as a result of the agency's Privacy Act violation. *Doe*, 540 U.S. at 620-21.

The Court rejected Krieger's improper disclosure claim in his original Complaint, holding that Krieger failed to "identify any 'records' or arguably confidential information that has been wrongly disclosed." *See* [20] Mem. Op. at 15. The D.C. Circuit reversed, holding that Krieger pled enough facts to survive a Motion to Dismiss on the claim, but cautioned that "[i]f Krieger's lawsuit went forward, there would come a time when Krieger would have to identify the particular records Fadely unlawfully disclosed." *Krieger*, 211 F.3d at 136. That time has arrived.

Krieger argues that Fadely improperly disclosed information contained in five records: (1) Krieger's OPF (Official Personnel File), which includes his PARs (Performance Appraisal Reports); (2) pre-1993 DOJ emails; (3) documents located in a box labeled "KGF DL" that was located in a DOJ storage room; (4) two letters drafted by Fadely about the Delta litigation, and a letter drafted by Allen about Krieger's departure date from the DOJ, that were stored on the agency's word processing servers; and (5) a DOJ Press Release stored at the DOJ public affairs office.[3] *See* Pl.'s Opp'n to Defs' Mot. for Summ. J. at 10-23.

As stated above, Krieger must first establish that these records are "contained within a

---

[3] The information allegedly disclosed from these records, as discussed in greater detail below, relates to Krieger's departure date from the DOJ, his participation in the Delta trial, and Fadely's opinions concerning the quality of his work while employed under her supervision.

system of records." 5 U.S.C. § 522a(b).  Assuming Krieger can establish that first element,

Krieger must then show that Fadely improperly disclosed information contained in the identified

records.  The Court shall examine each of these elements in turn.[4]

> i.      Are the identified records maintained within a system of records?

Under the provisions of the Privacy Act, not every document held by an agency is a

"record" and not every collection of data constitutes a "system of records."  Although the Parties

do not generally dispute that Krieger has identified "records" for purposes of the Privacy Act, *see*

5 U.S.C. § 552a(a)(4), the Parties dispute whether they are contained within a "system of

records."  To constitute a system of records, the records must be located within "a group of

records under the control of any agency from which information is retrieved by the name of the

individual or by some identifying number, symbol, or other identifying particular assigned to the

individual."  5 U.S.C. § 552a(5).   The D.C. Circuit has explained that "a group of records should

generally not be considered a system of records unless there is *actual* retrieval of records keyed

to individuals."  *Henke v. United States Dep't of Commerce*, *et al.* 83 F.3d 1453, 1460 (D.C. Cir.

1996) (emphasis added).  The mere "capacity to retrieve information indexed under a person's

name," as opposed to a practice where agency employees "in fact retrieve records in this way," is

insufficient to establish the existence of a system of records under the Privacy Act.  *Id.* at 1461

n.12.  *See also* Office of Management and Budget Privacy Act Implementation Guidelines and

Responsibilities, 40 Fed. Reg. 28, 948, 23, 952 (July 9, 1975) (identifying a system of records

only if: (1) there is an "indexing or retrieval capability using identifying particulars . . . built into

---

[4] Because the Court finds that Krieger's improper disclosure claim fails after examining
these first two elements, the Court shall not also examine the other elements necessary to state a
claim for relief under subsection 552a(b).

the system"; and (2) the agency "does, in fact, retrieve records about individuals by some

personal identifier").  Based on the statutory language and the case law in this Circuit, the Court

finds that only one of the five records that Krieger identifies are contained within "a system of

records" for purposes of the Privacy Act.

First, Krieger alleges, and Defendants agree, that Krieger's OPF is contained within a

system of records.  *See* Defs' Mot. for Summ. J. at 6; Pl.'s Opp'n to Def.'s Mot. for Summ. J. at

5.  Krieger also alleges, and Defendants do not disagree, that Krieger's PARs are also contained

within a system of records.  *See* Pl.'s Opp'n to Defs' Mot. for Summ. J. at 5; Defs' Reply at 4.

Accordingly, the Court finds that Krieger has properly identified his OPF and the documents

contained therein as a record maintained within a system of records.

Second, Krieger suggests that based on his review of the emails provided during

discovery, "it is axiomatic that the dissatisfaction of Defendant Fadely, as she subsequently

expressed to John Adler [of Adler, Kaplan & Begy], was contained in numerous other emails she

authored or retrieved, later destroyed by Defendant DOJ."  Pl.'s Opp'n to Defs' Mot. for Summ.

J. at 5.  Although the Court is unaware of the axiom to which Krieger refers, according to

Krieger, these emails were part of a system of records.  Krieger invites the Court to draw an

adverse inference against Defendants based on the DOJ's destruction of these emails.

Defendants explain that these emails were stored on reel-to-reel tapes that were destroyed

"once this technology was no longer cost effective."  Defs' Reply at 5 & Ex. B at 3 (Defs'

Response to Pl.'s First Set of Interrogatories).  In order for an agency employee to have retrieved

records on tapes that related to Krieger, the tapes would have first required restoration onto a

server.  *Id.*  An individual would then have had to review "each and every user's mailbox and do

17

a manual search for Plaintiff's name. *Id.* This process would have been required for all Aviation and Admiralty users (approximately 60), and then the entire process would have had to be repeated for [each additional tape]." *Id.* This process suggests that agency employees do not "actually retrieve[] [the records] by the name or identifier of an individual," and cannot, therefore, be considered a system of records. *Henke*, 83 F.3d at 1460. Even if tapes were not previously destroyed and the emails resided on the agency's servers, Krieger offers no facts suggesting that they would have been indexed by name, or that an electronic folder existed that grouped emails related to him by name or other identifier. Instead, Krieger speculates that the emails "could and [were] searched by name or other identifier." Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 6 & n.6. Courts have routinely rejected similarly specious claims. *See, e.g.*, *Chang v. Dep't of the Navy*, 314 F. Supp. 2d 35, 41 (D.D.C. 2004) (holding that plaintiff's assertion, based on his "twenty years of experience" in dealing with Navy computer files, that it was "technically possible to retrieve the [records at issue] by searching for his name [was] insufficient to meet the requirement that he data [be] retrieved in such a manner"); *Yonemoto v. Dep't of Veterans Affairs*, Civ. No. 06378, 2007 U.S. Dist. LEXIS 32523 at *15-*16 (D. Haw. May 2, 2007) ("there is no evidence before the Court that the email information at issue here 'is retrieved' by the agency in practice . . . . Retrieval capability alone . . . 'is not sufficient to create a system of records'") (quoting *Henke*, 83 F.3d at 1459).[5] On this record, the Court finds that

---

[5] Although Krieger cites *Williams v. Dep't of Veterans Affairs*, 104 F.3d 670, 672, 675 (4th Cir. 1997) for the proposition that the agency's email system contains Privacy Act-protected records, *see* Pl.'s Opp'n to Defs' Mot. for Summ. J. at 6, that case provides Krieger with no support. First, the decision discusses electronic storage of information, but it does not specifically address email systems. Second, the Fourth Circuit remanded rather than decided the question of whether documents stored on floppy disks and a network server were contained in a system of records. *Williams*, 104 F.3d at 672 and 675. To the extent the decision is relevant to

18

there is no evidence to suggest that the agency's pre-1993 emails were organized within a system of records, and the Court shall decline Krieger's invitation to draw an adverse inference based on their destruction.

Even if these emails were maintained within a system of records, the Court would still decline to draw an adverse inference for two reasons. First, such an inference is warranted only when a plaintiff sets forth facts sufficient to demonstrate a defendant's bad faith, and Krieger has not done so here. *See Rice v. United States,* 917 F. Supp. 17, 19 (D.D.C. 1996) ("to justify the inference, 'the circumstances of the destruction must manifest bad faith'") (quoting *Battocchi v. Washington Hosp. Ctr.*, 581 A.2d 759, 765-66 (D.C. 1990)). Second, as described in more detail below, the idea that Fadely would have to retrieve from her emails the information she allegedly disclosed (i.e., Krieger's departure from the DOJ, his participation in the Delta litigation, and Fadely's low regard from the quality of Krieger's work) is untenable.

<u>Third</u>, Krieger argues that a box of documents located in a DOJ storage room and labeled with the identifiers "KGF DL" and "DOJ CIV/TORTS K. HANSON 10132" (hereinafter "KGF Box") contained documents that were actually retrieved by searching for his name. *See* Pl.'s Opp'n to Defs' Mot. for Summ. J. at 15 n.16. The Court previously rejected Krieger's argument that the identifiers on the outside of the box were references to him. *See* [50] Mem. Op. dated Nov. 17, 2000 at 17 ("[n]either of Plaintiff's contentions [concerning the external box labels] convince the Court that the challenged documents are part of a system of records"). Similarly, none of the folders inside the box are labeled with Krieger's name. *See* Defs' Mot. for Summ. J.

---

the instant Motions, it provides support for the unremarkable proposition that electronic records *may* constitute a system of records when indexed to a particular individual.

Ex. A ¶ 13 (Second Decl. of K. Fadely) (hereinafter "Fadely Decl.") (listing folder names

including "list of exhibits," "Closing," "pending - DL 191", "DELTA," and "DL 191 -

DECISION!!!," among a few others).  Fadely describes the contents of the box as a collection of

"odds and ends," with many of the documents relating to the Delta litigation.  *Id.* ¶¶ 13-14

(describing litigation materials, correspondence, news clippings, and other documents related to

the Delta litigation).

In addition to the foregoing folders and materials, the KGF Box also contained several

documents relating to Krieger.  In particular, the Box contained two announcements concerning

speeches that Krieger was scheduled to give after his departure from the DOJ, s*ee* Defs' Mot. for

Summ. J. Ex. H, I, and a copy of a complaint filed by Krieger against Kroll & Tract in August

1992, *id*. Ex. K.  Despite the fact that these documents were located with documents bearing no

relationship to Krieger, and were not placed in a box or folders that were indexed to Krieger's

name, Krieger nonetheless argues the KGF Box constitutes a system of records from which

documents indexed to Krieger's name are actually retrieved.  *See* Pl.'s Opp'n to Defs' Mot. for

Summ. J. at 14-19.

Krieger argues that agencies cannot evade the requirements of the Privacy Act by

"creative labeling," and that a court may consider records to be Privacy Act-protected if a

plaintiff sets forth sufficient evidence to "support an allegation of evasive tactics."  Pl.'s Opp'n

to Defs' Mot. for Summ. J. at 14.  As evidence in this regard, Krieger indicates that "[d]uring the

course of [his] employment at the Aviation Section it was custom and practice to evade the

strictures of the Privacy Act by deliberately not placing any records concerning adverse expert

witnesses into a system of records."  *Id.*  Krieger surmises that "[j]ust as the Aviation Section

purposefully evaded the Privacy Act in compiling extensive records about [expert witnesses], so, too, did it while compiling records about Plaintiff." *Id.* at 15.  The Court rejects this argument. The practice that Krieger describes – agency employees lending attorneys records related to expert witnesses and avoiding the creation of a central record on expert witnesses that contain records retrievable by name – bears no relationship to his allegation that Fadely avoided the Privacy Act's provisions by labeling records related to Krieger with the special identifier "KGF DL."   There is also no evidence in the record supporting Krieger's claim that "KGF DL" is a "designator [used to] identify [Krieger's records] to Defendant Fadely and the other personnel in the Aviation section." *Id.*

Krieger's argument is further undermined because so many of the documents in the KGF Box are properly characterized by its label, i.e., Kathryn G. Fadely's (KGF) documents related to the Delta litigation (DL).  *See Henke*, 83 F.3d at 1461 ("We hold . . . that in determining whether an agency mantains a system of records keyed to individuals, the court should view the entirety of the situation, including the agency's function, the purpose for which the information was gathered, and the agency's actual retrieval practice and policies.").  That several of the documents do not fit this description does not mean that Fadely has intentionally evaded the provisions of the Privacy Act, as an agency employee seeking to find records relating to Krieger would have to individually review each document to locate records associated with him – hardly a characterization of an "actual practice of retrieval by name."  *See McCready, et al. v. Nicholson*, 465 F.3d 1, 11 (D.C. Cir. 2006) (explaining that Privacy Act provisions seek to "shield[] agencies from costly fishing expeditions").  On this record, the Court finds that Krieger has not set forth sufficient evidence to support his argument that Fadely intentionally evaded the

provisions of the Privacy Act by maintaining records related to Krieger in the KGF Box, nor

otherwise met his burden to show that the records in the KGF Box are maintained within a

system of records.

      <u>Fourth</u>, Krieger argues that two letter drafted by Fadely to the editors of the *ABA Journal*

and *Business Insurance*, respectively, and one letter drafted by Allen to Krieger's new law firm

concerning his start date, constitute records maintained within a system of records.  *See* Pl.'s

Opp'n to Defs' Mot. for Summ. J. at 12-13.  These letters were stored on the agency's word

processing servers and were retrieved from the computers used by Fadely and Karen Hanson, the

head secretary for the Aviation and Admiralty Staff.  Specifically, the letters drafted by Fadely

were found in a subdirectory labeled "Letters" within the "MyFiles" directory on Fadely's DOJ

computer.  *See* Fadely Decl. ¶ 9.  Fadely explains that the "Letters" subdirectory is "a general

correspondence file, containing a variety of correspondence, both business and personal in

nature, and currently containing approximately 100 documents.  My practice is to retrieve

correspondence from my computer, when necessary, by searching through the documents

contained in the "Letters" subdirectory." *Id.*  For purposes of identification, Fadely named one

letter "Editor.aba," while she named the other "Bus.ins." *Id.*  The letter drafted by Allen was

located in the "MyFiles" directory of Ms. Hanson's computer, and was named "Murdock1.rwk."

Def.'s Mot. for Summ. J. Ex. E ¶ 3 (Second Decl. of K. Hanson) (hereinafter "Hanson Decl.").

      The circumstances surrounding these records suggest that they are not maintained in a

system of records actually retrieved by Krieger's name.  As the Fourth Circuit has stated,

"computer files are like paper documents . . . and hard drives are like file cabinets." *Williams v.*

*Dep't of Veterans Affairs*, 104 F.3d 670, 676 (4th Cir. 1997).  In that regard, the letters pertaining

to Krieger were found in folders labeled "Letters" and "Myfiles."  Nothing about those names

identify documents related to Krieger, and in fact, Defendants indicate that those directories

contain other subdirectories and documents wholly unrelated to Krieger.  *See* Fadely Decl. ¶ 3;

Hanson Decl. ¶ 3.  Krieger suggests that even if the documents are not indexed by name or other

individual identifier, agency employees could use an electronic "search" function to find his

records easily and quickly.  *See* Pl.'s Opp'n to Defs' Mot. for Summ. J. at 20 ("[b]oth the

Windows operating system and WordPerfect offer powerful key-word search functions so that

[the] label [] as well as text of every computer 'file' in any directory, especially the 'MyFiles'

directory, can be instantly searched and responsive document retrieved").  Even if that were

correct, a search function does not a system of records make.  *See Chang*, 314 F. Supp. 2d at 41

(holding that plaintiff's assertion that it was "technically possible to retrieve the [records at issue]

by searching for his name [was] insufficient to meet the requirement that he data was retrieved in

such a manner").[6]  If Krieger's argument concerning the search function were correct, all of the

agency's electronic systems using a Windows platform would contain records that were

maintained within a system of records, regardless of how the documents were stored or labeled,

and all of which would have to be recorded in the Federal Register as agency records.  *See* 5

U.S.C. § 552a(e)(4).  Such a result is inconsistent with both the purpose and spirit of the Privacy

---

[6] The Court notes that Krieger states in his Statement of Material Facts that "Documents are routinely retrieved by Aviation Section attorneys and staff utilizing the word search function on the word processing computer system . . . ."  Pl.'s [86] Stmt. ¶ 23.  That assertion, however, is unsupported by any citation to the record.  *See* Local Civil Rule 56.1 (requiring "references to the parts of the record relied on to support [each] statement"); *Liberty Lobby*, 477 U.S. at 249-50 ("[m]ere allegations . . . are not enough to prevent the issuance of summary judgment").  *See also Johnson v. Washington Metro. Area Transit Auth.*, 883 F.2d 125, 128 (D.C. Cir. 1989) (noting that summary judgment is appropriate where the non-movant supports his arguments through the use of a self-serving affidavit or declaration).

Act, and accordingly, the Court shall find that these documents on the agency's word processing

servers were not contained within a system of records.

Fifth, Krieger claims that a Press Release issued by the DOJ that acknowledged the

contributions of the attorneys who had worked on the Delta litigation was maintained within a

system of records.  Defendants submitted the declaration of Obern A. Rainey, a Public Affairs

Specialist with the agency, who indicates that "[p]aper records of press releases issued for dates

up to and including 1995 are stored at the Washington National Records Center.  The practice is

to index and retrieve these press releases from [that facility] by date of issuance.  To the extent

our office also maintains copies of these press releases, the practice of our office is to index and

retrieve them by date of issuance."  Def.'s Reply Ex. C at 1.  Krieger does not advance any

argument to refute this assertion.  Because the agency's press releases are actually retrieved by

date and not by individual identifier, they cannot be characterized as included within a system of

records.

Based on the foregoing, the only record properly identified by Krieger as Privacy Act-

protected is his OPF (and the documents included therein).

        ii.        Did Fadely disclose information in violation of the Privacy Act?

Krieger identifies four instances[7] where Fadely allegedly disclosed information about him

---

[7] Krieger's submissions are inconsistent with respect to the number of disclosures at issue.  For example, he suggests that "his claim rests upon a variety of disclosures by Defendant Fadely to at least fifty (50) individuals, of which Plaintiff has admissible evidence of only three . . . ."  Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 4.  Nevertheless, one of the disclosures not included among the three is a DOJ Press Release that Krieger alleges contained inaccurate and protected information, *id.* at 10, which suggests there are four disclosures, not three.  Id. at 10.  The Court shall entertain these four alleged disclosures, but shall not address the other 46 which are not supported by any discernible factual or legal analysis.

from Privacy Act-protected records without his consent:  (1) A letter drafted by Fadely to the *ABA Journal* dated Nov. 30, 1989, indicating that Plaintiff resigned before the end of the Delta trial; (2) A letter drafted by Fadely to *Business Insurance* dated March 15, 1990, indicating that Plaintiff resigned before the end of the Delta trial; (3) A DOJ Press Release dated Sept. 1, 1989, indicating that Plaintiff participated in a portion of the Delta trial; and (4) A conversation between Fadely and Adler in 1991, wherein Fadely indicated her "surprise and disappointment" that Adler's law firm had hired Krieger because she "didn't have very high regard for [Krieger's] efforts in connection with cases that she had worked on," and that Krieger's role in the Delta trial had been "limited" and primarily related to "a computer study for use as a trial exhibit" in the case.  Pl.'s Opp'n to Defs' Mot. for Summ. J. 9-23 & Ex. 1.  Subject to one narrow exception that is discussed below, Krieger must show that Fadely actually retrieved and disclosed information contained in a record maintained within a system of records.  Having narrowed the universe of records that fit this description to Krieger's OPF, Krieger must show that Fadely improperly disclosed information that she actually retrieved from Krieger's OPF.  For the reasons that follow, the Court finds that none of Fadely's alleged disclosures constitutes a violation of the Privacy Act.

The Privacy Act "does not prohibit *all* nonconsensual disclosures of information found in an individual's records."  *Mulhern v. Gates*, Civ. No. 052036, 2007 U.S. Dist. LEXIS 88970 at *17 (D.D.C. Dec. 4, 2007).  Instead, liability for nonconsensual disclosures is limited by the "rule of retrieval," which requires that the information disclosed be "directly or indirectly retrieved from a system of records."  *Fisher v. Nat'l Inst. of Health, et al.*, 934 F. Supp. 464, 473 (D.D.C. 1996), *aff'd without opinion*, 107 F.3d 922 (D.C. Cir. 1996).  "'[I]nformation derived solely from

25

independent sources is not prohibited by the statute even though identical information may be contained in an agency system of records.'" *Id.* (quoting *Thomas v. United States Dep't of Energy*, 719 F.2d 342, 345 (10th Cir. 1983)).   Accordingly, application of the rule of retrieval means, in practical effect, that "even if an agency official discloses information that exists in the agency's records, the disclosure is rarely actionable unless the official physically retrieved the information from those records.  If the official's knowledge of the disclosed information derives from sources that are not protected "records," then the disclosure rarely implicates the Privacy Act." *Mulhern*, 2007 U.S. Dist. LEXIS 88970 at *18.

In the present matter, Fadely indicates that she "has never seen nor obtained any information from" Krieger's OPF, and could not have, therefore, disclosed information concerning its contents.  Fadely Decl. ¶ 8.  Instead, Fadely's knowledge of Krieger's participation in the Delta trial, his departure date, and her own firsthand impressions of the quality of his work, were derived from sources having nothing to do with his OPF.  As Magistrate Judge Facciola properly explained in an earlier discovery ruling in this case,

> Under [the Privacy Act], there is a rule of retrieval, not a rule of coincidence.  If there is information in a record, and a federal employee gained that same information from the use of her own senses, the employee's telling others what she saw or heard does not violate the Privacy Act merely because there is a record, subject to the Privacy Act, which also contains that information . . . The Privacy Act speaks to the disclosure of records; it does not create a monastic vow of silence which prohibits governmental employees from telling others what they saw and heard merely because what they saw or heard may also be the topic of a record in a protected file.

[67] Mem. Op. and Order dated Feb. 15, 2001 at 2.  As Krieger sets forth no facts indicating that Fadely actually retrieved information from Krieger's OPF before making a disclosure, the disclosures identified by Krieger do not constitute violations of the Privacy Act pursuant to the

rule of retrieval.

Although Krieger does not deny the foregoing facts, he argues that the Court should apply a narrow exception to the rule of retrieval that was espoused by the D.C. Circuit in *Bartel v. Federal Aviation Administration, et al.*, 725 F.2d 1403 (D.C. Cir. 1984).  In *Bartel*, a Federal Aviation Administration official (who was also Bartel's supervisor) requested an investigation into an apparent violation of the Privacy Act by Bartel.  725 F.2d at 1405-06.  That investigation, overseen by Bartel's supervisor, resulted in the creation of a file that constituted a "record" within a "system of records."  *Id.* at 1408.  The supervisor disclosed the contents of the file to others without Bartel's consent, and Bartel brought a suit for (ironically) a Privacy Act violation. *Id.* at 1407-08.  The defendants argued that the Privacy Act was not violated because Bartel's supervisor never consulted the file before revealing its contents.  *Id.* at 1408.  Although the district court held that the rule of retrieval prevented the finding of a Privacy Act violation under those circumstances, the D.C. Circuit reversed.  *Id.*  It held that the defendants' argument, if accepted, would "deprive the Act of all meaningful protection of privacy" because it would allow officials to circumvent the Act's nondisclosure provisions "by simply not reviewing [a covered record] before reporting its contents or conclusions."  *Id.* at 1409, 1411.

The D.C. Circuit limited its holding in *Bartel* to the "peculiar set of circumstances present here: disclosure by an agency official of his official determination made on the basis of an investigation which generated a protected personnel record."  *Id.* at 1409.  The Court specifically distinguished *Jackson v. Veterans Admin.*, 503 F. Supp. 653, 656 (N.D. Ill. 1980), on the basis that the court in *Jackson* "explicitly found that 'the official alleged to have divulged protected information had knowledge of the facts disclosed *independent* of any record in the plaintiff's

OPF or elsewhere.'"  *Id.* (emphasis in original).  The present case offers circumstances that are

easily distinguishable from those presented in *Bartel*.  First, Krieger argues that Fadely disclosed

information that was contained in his OPF and other records that are not subject to Privacy Act

protection – not a record created during the course of an investigation.  That distinction matters,

as the D.C. Circuit emphasized the unique set of facts created by having a supervisor disclosing

the results of an investigation that he or she was responsible for implementing or overseeing –

not simply an employee having knowledge of information that is coincidentally contained in a

subordinates' personnel file or similar records.  Second, the information alleged to have been

disclosed by Fadely was available to her through other independent sources, just as in *Jackson*.

Specifically, Krieger's date of departure from the DOJ was known to Fadely because Krieger

informed Fadely and Allen of the same.  *See* Defs' Mot. for Summ. J. at 9 ("[Krieger] himself

informed [Fadely] personally of his intended departure from the Aviation Section in advance of

the end of the Delta trial"); Pl.'s Opp'n to Defs' Mot. for Summ. J. ("It is only natural that

[Krieger] would inform if not discuss with his immediate supervisor any resignation plans.  Who

else would he inform?").  Krieger's participation in the Delta litigation was known to everyone

who worked on that litigation, in addition to anyone who accessed the public docket in that case

and saw his name listed as an attorney of record.  Defs' Mot. for Summ. J. at 9 and ("[Krieger's]

departure from the Aviation Section prior to the end of the Delta trial was . . . a matter of 'general

office knowledge'"); Pl.'s Opp'n to Defs' Mot. for Summ. J. at 10 (acknowledging that Krieger's

"participation in the Delta trial . . . occurred in open court[] and was a matter of public record").

As for Fadely's disclosures to Adler concerning her low regard for Krieger's work at the DOJ,

that information was clearly drawn from her own independent perceptions because it was not

included in Krieger's OPF.[8]

Because Fadely did not disclose any information about Krieger that was retrieved from a record maintained in a system of records, the Court shall grant Defendants' Motion for Summary Judgment as to Krieger's claim brought under 5 U.S.C. § 552a(b).

### 2.    Failure to maintain records

Section 552a(e)(5) of the Privacy Act requires agencies to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5).  To prevail on a claim for money damages for a violation of subsection (e)(5) of the Privacy Act, Krieger must prove that:

> (1) he has been aggrieved by an adverse determination; (2) [the agency] failed to maintain his records with the degree of accuracy necessary to assure fairness in [a] determination; (3) reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) [the agency] acted intentionally or willfully in failing to maintain accurate records.

*See Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996).

---

[8] Although Krieger had originally argued that Fadely's low regard for Krieger's work was reflected in a final PAR created at the time he left the DOJ, it appears the Aviation Section had a practice of not creating PARs for departing employees, and no final PAR was created for Krieger.  *See* Defs' Reply Ex. A. (Decl. of Gary Allen) ("it has never been the practice of our office to prepare PARs for departing employees, and no PAR was prepared for Plaintiff in connection with his resignation from the Justice Department in 1989.").  Krieger indicates that he saw all of the PARs that had been created, and all were favorable.  *See* Pl.'s Opp'n to Defs' Mot. for Summ. J. at 5 ("Plaintiff saw all of his PARS except the final one [which was not created], and knows the ones he saw to be favorable").  Accordingly, Fadely's low regard for Krieger's work could not have been reflected in Krieger's OPF.  The Court also notes, although the point is not pressed by Defendants, that the Adler conversation also appears to contain at least some statements that could be characterized as "opinions" and not "statements of fact."  The Privacy Act does not prevent individuals from making statements disclosing opinions.  *See Webb v. Magaw*, 880 F. Supp. 20, 25 (D.D.C. 1995).

Krieger claims that Defendants violated this provision because his PARs, which are required to be maintained in his OPF, *see* 5 C.F.R. § 293.405(a), were missing from his OPF when Defendants produced it during discovery.  *See* Pl.'s Opp'n to Defs' Mot for Summ. J. at 23. According to Krieger, the missing PARs resulted in an adverse determination in mid-1990 when he applied for jobs at the Federal Programs Branch and the offices of the United States Attorney in Washington D.C. and Minneapolis, Minnesota.  *See* Second Am. Compl. ¶ 47; Defs' Mot for Summ. J. at 21.

This claim must be dismissed because Krieger has adduced no evidence that his missing PARs, even if they were missing in 1990 (which is unknown), were the proximate cause of his failure to obtain job offers for these positions.  On the contrary, Krieger attaches to his Opposition the letters of rejection sent by the Federal Programs and Commercial Litigation Branches at the DOJ as well as the offices of the United States Attorney in Washington, D.C. and Minneapolis, Minn.  *See* Pl.'s Opp'n to Defs' Mot. for Summ. J. Ex. 10.  The letters set forth various reasons explaining why Krieger's applications were rejected, including "staffing and budget limitations," and "many more attorneys with fine qualifications such as [Krieger's] applying than we have positions to fill."  *Id.*  Krieger wrote to the United States Attorney in Washington, D.C. seeking an explanation for his rejection, and in reply was told that the "office receives a very large number of applications from very highly qualified attorneys such as [Krieger].  Unfortunately, we are able to extend offers to only a small percentage of those who apply.  The task of choosing among so many well-qualified candidates is a most difficult one."  *Id.* at 11.  Significantly, not one of the letters Krieger attaches raises any issue concerning his PARs, nor is there even an oblique reference to an incomplete application.  Krieger has simply

30

provided no evidence that (i) his PARs were missing in 1990 because they were missing during discovery a decade later, or that any of these offices (i) requested his PARs, (ii) sought to review his PARs, (iii) were unable to review his PARs, or (iv) would have offered Krieger a job except for his missing PARs.[9]

Although Krieger argues correctly that all inferences must be drawn in his favor as the non-movant on summary judgment, Krieger still bears the burden of setting forth sufficient evidence to raise a triable issue of material fact as to each element of his claim. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'") (citing Fed. R. Civ. P. 56(e)) (emphasis in original).  In this regard, because Krieger has failed to set forth any evidence that "reliance on inaccurate records was the proximate cause of [an] adverse determination," the Court shall grant Defendants' Motion for Summary Judgment on this claim under 5 U.S.C. § 552a(e)(5).

3.   Failure to ensure accuracy of records prior to dissemination

Section (e)(6) of the Privacy Act requires that "prior to disseminating any records about an individual to any person other than an agency . . . [the agency must] make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes." 5

---

[9] The Court also notes that at least two of these offices appear to have interviewed Krieger, and yet they too apparently made no mention of missing PARs or an incomplete application. *See* Pl.'s Opp'n to Defs' Mot. for Summ. J. Ex. 10 (follow up letters sent by Krieger after interviewing with two of the offices).

U.S.C. § 552a(e)(6).  Krieger argues that the DOJ Press Release described above, and the letters

that Fadely authored to *Business Insurance* and the *ABA Journal*, violate this provision.

The Court shall grant Defendants' Motion for Summary Judgment on this claim because

subsection (e)(6) only applies to records contained within a system of records.  *See Maydak, et al.*

*v. United States, et. al.*, 363 F.3d 512, 517-519 (D.C. Cir. 2004) (distinguishing 552a(e)(7),

which does not require a system of records, from the other subsections of 522a(e)); *McCready, et*

*al. v. Nicholson,* 465 F.3d 1, 12 & n.6 (plaintiff conceded that subsection (e)(6) only applied to a

system of records based on the D.C. Circuit's decision in *Maydak*, 363 F.3d at 517-18).[10]

4.      Maintaining records describing Krieger's First Amendment activities

Section 552a(e)(7) of the Privacy Act provides that an agency shall "maintain no record

describing how any individual exercises rights guaranteed by the First Amendment unless

expressly authorized by statute or by the individual about whom the record is maintained or

unless pertinent to and within the scope of an authorized law enforcement activity."  5 U.S.C. §

552(a)(e)(7).  The D.C. Circuit has made clear that subsection (e)(7) applies to all records

regardless of whether they are maintained within a "system of records."  *See Albright v. United*

*States*, 631 F.2d 915, 916-17 (D.C. Cir. 1980) (an agency may not maintain any record of an

individual's First Amendment activity "even if [that record] is not subsequently incorporated into

the agency's system of records").  The D.C. Circuit has further explained that the Privacy Act

---

[10] The Court notes that even if the underlying records were maintained in a system of records, this claim would still be dismissed because the Court finds none of the disclosures to be incorrect or incomplete within the meaning of this provision.  Although Krieger argues that his title was "trial attorney" and not "of counsel," and that the language in Fadely's letters and the DOJ Press Release were "designed to marginalize his role in the Delta trial," the Court finds the former to be a distinction without a difference, and the latter to be an issue that is incapable "of being verified."  *Webb v. Magaw*, 880 F. Supp. 20, 25 (D.D.C. 1995).

"clearly prohibits even the mere collection of such a record, independent of the agency's maintenance, use, or dissemination" of the record. *Id.* at 918.

Krieger alleges that Defendants collected records related to his First Amendment activities and have, consequently, violated subsection (e)(7).[11]  These records, maintained in the KGF Box, include an announcement for a speech Krieger was scheduled to give at the National Air Transportation Foundation, Defs' Mot. for Summ. J. Ex. H, an announcement for a speech Krieger was scheduled to give on international terrorism, *id.* Ex. I, and a copy of a Complaint filed by Krieger against Kroll & Tract, one of his former law firms, *id.* Ex. K.[12]  The two announcements describe where and when Krieger would be speaking, and include brief summaries of the expected content of the speeches.  Materials conveying far less content have been found by the D.C. Circuit to fall within the scope of subsection (e)(7).  *See Maydak v. United States*, 363 F.3d 512, 516 (D.C. Cir. 2004) ("photographs of prisoners visiting with family, friends, and associates depict the exercise of associational rights protected by the First Amendment" and may violate subsection (e)(7)).  Other circuits have found that materials such as newsletters and press clippings concerning an individual's speeches may relate to an individual's First Amendment rights in violation of subsection (e)(7).  *See, e.g.*, *Clarkson v. I.R.S.*, 678 F.2d 1368, 1374 (11th Cir. 1982).

---

[11] Krieger also raises this claim as a violation of section 552a(e)(1).  That claim is described in section III.A.6, *infra*.

[12] Krieger references several other documents in his analysis, such as the email Allen wrote memorializing his conversation with Treibitz, or the letters drafted by Fadely to the *ABA Journal* and *Business Insurance*.  Unlike the documents described in the text, these documents cannot be said to "describe" Krieger's First Amendment activities as contemplated by subsection (e)(7). *See Reuber v. United States*, 829 F.2d 133, 143 (D.C. Cir. 1987).

Defendants offer two unpersuasive reasons to explain why these records do not fall within the scope of subsection (e)(7).  First, Defendants argue that these documents do not "describe" the exercise of Krieger's First Amendment rights because they relate to the Delta litigation, not Krieger.  Defs' Mot. for Summ. J. at 27.  A brief review of the documents suggests otherwise. *See* Defs' Mot. for Summ. J. Ex. H (announcing that Krieger would address the National Air Transportation Foundation to "offer the federal government's perspective in the enforcement of Federal Aviation Administration compliance regulations," without referencing the Delta litigation); *id.* Ex. I (announcing a speech Krieger would provide on travel-related terrorism and without referencing the Delta litigation); Ex. K (the Complaint filed by Krieger against a former law firm, Kroll & Tract, bearing no relation to the Delta litigation).[13]  The Court finds, therefore, that these records cannot be characterized as describing the Delta litigation, and that Krieger has identified documents that describe the exercise of his First Amendment rights.

Second, Defendants argue that even if these documents "describe" the exercise of Krieger's First Amendment activities, the documents are not "agency records" that may form the basis for a Privacy Act violation.  *See* Defs' Mot. for Summ. J. at 27-31.  According to Fadely, the documents are merely a collection of "odds and ends" maintained by Fadely for her own personal use.  Fadely Decl. ¶ 14.  As a preliminary matter, Defendants are correct that not all documents located within an agency building are "agency records."  *See, e.g.* OMB Guidelines, 40 F.3d Reg. at 28, 952 (agency records do not include "[u]ncirculated personal notes, papers and records which are retained or discarded at the author's discretion and over which the agency

---

[13] The dates associated with these records also suggest that they were placed in the KGF Box after the conclusion of the Delta litigation and after Krieger had left the DOJ.

exercises no control or dominion"); *Bowyer v. United States Dep't of Air Force, et al.*, 804 F.2d 428, 431 (7th Cir. 1986) ("Private notes are not subject to the requirements of the Privacy Act."). In the present case, however, certain facts in the record suggest the KGF Box may not be merely a collection of personal items.  For example, the KGF Box was stored in an agency storage room that also contained "General Accounting Office files and expert witness files," which Defendants do not allege are personal records.  Fadely Decl. ¶ 11.  The top of the box was labeled with the designation "DOJ CIV/TORTS K. HANSON 10132."  *See* Fadely Decl. ¶ 10.  The fact that the box was labeled with a name other than Fadely's seems inconsistent with the claim that these records were purely personal.  *See Bowyer*, 804 F.2d at 431 (finding that facts surrounding files that were alleged to be personal "memory refreshers" were inconsistent with the claim that they were "personal and kept private," and therefore, "summary judgment [was] precluded").  In addition, the box consists of more than mere "personal notes or telephone lists," because Fadely also concedes that the box contains many of the materials she used during the Delta trial.  *See* Fadely Decl. ¶ 13.  Despite Fadely's claim that these Delta litigation records "are distinct from the official Department of Justice Delta litigation files," it appears she used her "personal copies" to participate in various aspects of the Delta litigation (which may make the records related to the official activities of the agency).[14]  On this record, the Court cannot conclusively find that the records identified by Krieger are not "agency records."

The inquiry does not end, however, with a finding that Defendants may have collected

---

[14] These facts distinguish the present case from those such as *Bechhoefer v. United States Dep't of Justice*, where the Second Circuit found that a letter included as part of a random assortment of documents left in a desk drawer was not an agency record.  312 F.3d 563, 566-67 (2d Cir. 2002).

records related to the exercise of Krieger's First Amendment rights and that such records may constitute agency records.  As the D.C. Circuit explained in *Albright v. United States*, a plaintiff must show that the maintenance of these types of records had "an adverse effect," as well as produced "actual damages," to obtain monetary recovery.  631 F.2d at 921 (citing sections 522a(g)(1)(D), (g)(4)).  Krieger's Complaint alleges that he "has suffered and continues to suffer damages" as a result of the Defendants' violation of Privacy Act subsection (e)(7), *see* Second Am. Compl. ¶ 103, and that he has suffered "great mental anguish and anxiety, producing physical symptoms" based on Defendants' conduct, *see* Second Am. Compl. ¶¶ 51, 88.  The D.C. Circuit has held that "emotional trauma alone is sufficient to qualify as an 'adverse effect' under Section 552a(g)(1)(D) of the [Privacy] Act."  *Albright v. United States*, 732 F.2d 181, 186 (D.C. Cir. 1984).  *See also Montemayor v. Federal Bureau of Prisons*, Civ. No. 021283, 2005 U.S. Dist. LEXIS 18039 * 14 (D.D.C. Aug. 25, 2005) ("the recent trend at the District Court level has been to allow Privacy Act suits seeking general compensatory damages, such as pain and suffering and non-pecuniary losses, to proceed"); *Boyd v. Snow*, 335 F. Supp. 2d 28, 38 (D.D.C. 2004) ("The Court is unsure how this [Privacy Act] disclosure caused Ms. Boyd 'severe emotional and physical harm, sleeplessness and nightmares . . . .'  However, the Court will allow Ms. Boyd to attempt to prove such 'actual damages' at trial and will not enter summary judgment on this claim") (citation omitted).  Even if actual damages are not awarded, the D.C. Circuit has cautioned that a plaintiff meeting the other elements of a claim under subsection (e)(7) " may nevertheless be awarded some other remedy, such as destruction of the [First Amendment-related records]." *Albright*, 631 F.2d at 921.

In *Albright*, several federal employees had been videotaped without their knowledge

during a meeting explaining a denial of their promotions.  631 F.3d at 916.  The district court

held that no violation of subsection (e)(7) occurred because the videotape was not in a system of

records, but the D.C. Circuit reversed.  *Id.* at 918.  The D.C. Circuit remanded the case to the

district court and indicated that further fact-finding was needed to, *inter alia*, determine whether

the plaintiffs had suffered an adverse effect and actual damages as a result of the videotaping.  *Id.*

at 921.  On remand, the district court held an evidentiary hearing and found that "these plaintiffs

have no out-of-pocket expenses and suffered no physical injury and thus [their claims] are

dismissed, with prejudice."  558 F. Supp. 260, 264 (D.D.C. 1982), *aff'd*, 732 F.2d 181 (D.C Cir.

1984).  Nevertheless, the Court "direct[ed] that the videotape at issue and any copies thereof be

destroyed following exhaustion of all appellate remedies in this case" in accordance with "the

offer previously made by defendants."  *Id.* at 265.  *See also Becker, et al. v. Internal Revenue

Service*, 34 F.3d 398, 409 (7th Cir. 1994) (ordering documents to be expunged where the agency

had maintained newspaper articles describing the practices of plaintiffs as tax protestors).

    Like the *Albright* case, this Court does not have a sufficiently developed record to

determine whether (1) Krieger can sustain a showing of actual damages caused by an adverse

effect, or (2) whether Defendants would be willing to expunge the records related to the exercise

of Krieger's First Amendment activities.  Accordingly, the Court shall hold in abeyance

Defendants' Motion for Summary Judgment as it relates to Krieger's Privacy Act claim brought

under subsection (e)(7) pending further briefing by the Parties.[15]

     5.    Failure to publish notice of systems of records

---

[15]  The Order that accompanies this Memorandum Opinion sets forth additional
instructions associated with this briefing.

Subsection 552a(e)(4) of the Privacy Act requires agencies maintaining systems of records to provide notice and related information in the Federal Register about those systems of records. 5 U.S.C. § 552a(e)(4). Krieger claims that the DOJ has "intentionally maintained systems of records within the meaning of the Privacy Act in the word processing server for the Aviation Section, the departmental e-mail system, the file room for the Aviation Section containing the box labeled 'KGF DL' as well as records on expert witnesses and records on the First Amendment activities of Plaintiff . . . and a database of press releases in the office of public affairs . . . ." *See* Pl.'s Opp'n to Defs' Mot. for Summ. J. at 36. A claim under this subsection requires identification of records that are maintained within a system of records. *See Maydak*, 363 F.3d at 519; *McCready*, 465 F.3d at 12 & n.6. The records identified by Krieger are not maintained within a system of records. *See* section III.A.1, *supra*. Accordingly, the Court shall grant Defendants' Motion for Summary Judgment as it relates to this claim.[16]

6.    <u>Maintaining records that are not relevant or necessary</u>

Subsection 552a(e)(1) of the Privacy Act provides that an agency that maintains a system of records shall "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President." 5 U.S.C. § 552a(e)(1). Krieger argues that records related to his First Amendment activities are not "relevant and necessary" to accomplish a legitimate purpose of the DOJ, and therefore, collection of these records violates subsection (e)(1). This subsection requires a plaintiff to show that the identified records were maintained within a

---

[16] To the extent Krieger seeks to predicate his claim on the agency's collection of expert witness files, Krieger sets forth no facts suggesting he has standing to assert such a claim.

system of records, *see Maydak*, 363 F.3d at 518; *McCready,* 465 F.3d at 12 & n.6, and the Court

has held that these documents were not so maintained.  *See* section III.A.1, *supra*.  Accordingly,

the Court shall grant Defendants' Motion for Summary Judgment as it relates to this claim.

> 7.    Failure to establish adequate safeguards and prevent illegal maintenance of
>        records

Subsection 552a(e)(9) requires an agency to "establish rules of conduct for persons

involved in the design, development, operation, or maintenance of any system of records, or in

maintaining any record, and instruct each such person with respect to such rules and the

requirements of this section, including any other rules and procedures adopted pursuant to this

section and penalties for noncompliance."  5 U.S.C. § 552a(e)(9).  Subsection 552a(e)(10)

requires an agency to "establish appropriate administrative, technical and physical safeguards to

insure the security and confidentiality of records . . . ."  5 U.S.C. § 552a(e)(10).  Krieger argues

that the DOJ has violated these provisions by allowing the preceding violations of the Privacy

Act to occur.  This argument lacks merit.  First, the DOJ has promulgated extensive regulations

codified at 28 C.F.R. §§ 16 *et seq.* that safeguard its Privacy Act-protected records,

notwithstanding the allegations of a single violation against one individual.  Second, these

provisions apply to records maintained within a "system of records," *see Maydak*, 363 F.3d at

518-19; *McCready,* 465 F.3d at 12 & n.6, and Krieger has not identified any violations with

respect to records located within a system of records.  *See* section III.A.1, *supra*.  Accordingly,

the Court shall grant Defendants' Motion for Summary Judgment as it relates to this claim.

> B.    *First Amendment Constitutional Tort Claim (Count VII)*

Krieger previously brought a constitutional tort claim (often called a *Bivens* claim)

against Fadely for deprivation of rights under the Fifth and Fourteenth Amendments.  *See* Compl.

¶¶ 56-63.  The Court dismissed the claim on August 8, 1999, *see* [20] Mem. Op. at 11-14, and

the D.C. Circuit affirmed the dismissal of that and all other claims brought by Krieger, except for

his Privacy Act claim, *see Krieger v. Fadely*, *et al.*, 211 F.3d 134 (D.C. Cir. 2000).  On remand,

Krieger submitted an Amended Complaint that added a constitutional tort claim against Allen.

*See* [72] Mot. to Am. Compl. & Ex. 1.  Specifically, Krieger claims that in late January 1990, he

was scheduled to appear as keynote speaker at the Aviation Insurance Association's ("AIA")

biannual reception.  *See* Second Am. Compl. ¶ 34.  Although Krieger arranged to have Treibitz

(President of Z-Axis) join him as a co-speaker, Treibitz later withdrew as a co-presenter and

attended the reception as an observer only.  *Id.* ¶ 35.  According to Krieger, Allen coerced

Treibitz into withdrawing as a co-speaker.  *See* Pl.'s Opp'n to Defs' Mot to Dismiss or for

Summ. J. at 20.  It appears from the record that Krieger gave the keynote address as planned,

despite Treibitz's absence.  *Id.* at 19 n.12 (arguing that the value of his speech would have been

"increased" had Treibitz participated, but not arguing that he otherwise did not appear as the

keynote speaker).

Defendants have filed a Motion to Dismiss, or in the alternative, Motion for Summary

Judgment on this claim.  Defendants argue that Krieger's tort claim is untimely based on the

applicable three-year statute of limitations period, barred by the Court's prior Federal Tort

Claims Act ruling in this case, and subject to dismissal based on Allen's qualified immunity.  *See*

Mot. to Dismiss or for Summ. J. at 2.  Preliminarily, the Court finds that it cannot resolve

Krieger's claim on a Motion to Dismiss.  Defendants' argument concerning the running of the

statute of limitations period requires the Court to impermissibly resolve (on a Motion to Dismiss)

the Parties' disagreements concerning the extent of Krieger's knowledge at the time of the

alleged conduct.  *See Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) ("The

complaint must be 'liberally construed in favor of the plaintiff,' who must be granted the benefit

of all inferences that can be derived from the facts alleged.").  Defendants' second argument that

Krieger's claim is barred by the Court's previous Federal Tort Claims Act ("FTCA") ruling *could*

be decided on a Motion to Dismiss, and although this argument has not yet been entertained by

the D.C. Circuit, other circuits have found that subsequent *Bivens* claims are barred when an

FTCA claim has been decided in a prior judgment concerning the same subject matter.  *See* 28

U.S.C. § 2676 ("The judgment in an action under section 1346(b) of this title shall constitute a

complete bar to any action by the claimant, by reason of the same subject matter, against the

employee of the government whose act or omission gave rise to the claim.").  In the present case,

it is not clear to the Court that this provision would extend to a prior *ruling*, as the Court has not

entered a final *judgment* in this case.  *See Michalik v. Hermann*, Civ. No. 993496, 2002 U.S.

Dist. LEXIS 24274 at *2 (E.D. La. Dec. 16, 2002) ("section 2676 speaks of a *judgment* not an

interlocutory order or decision") (emphasis in original).  Nor is it clear to the Court that Krieger's

claim against Allen is sufficiently similar to his previous FTCA claim against Fadely such that it

could be considered the same subject matter.  *See Harris v. United States*, 422 F.3d 322, 333 (6th

Cir. 2005) (reading section 2676 to bar a *Bivens* claim that arises "out of the same actions,

transactions, or occurrences as an FTCA claim"); Pl.'s Opp'n to Defs' Mot. to Dismiss or for

Summ. J. at 13 (describing previous FTCA claim against Fadely as arising out of Krieger's

discharge from employment at AKB, whereas present *Bivens* claim arises out of Allen's attempt

to interfere with a presentation Krieger was scheduled to give to the AIA).  Because of these

41

uncertainties, the Court shall assume without deciding that Krieger's claim is not barred by the

section 2676, because it is clear to the Court that Allen is subject to qualified immunity that

prevents Krieger's tort claim from proceeding.

Pursuant to the Supreme Court's decision in *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, an individual is permitted to sue a federal official for money damages if one of his constitutional rights has been violated, though such suits are limited by the qualified immunity of federal officials. *See Bivens*, 403 U.S. 388 (1971); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (holding that federal officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly statutory or constitutional rights of which a reasonable person would have known") (citations omitted). To determine whether a federal official is subject to qualified immunity, a court must engage in a two-step analysis. First, the court must evaluate whether the plaintiff has been deprived of an actual constitutional right, asking whether, "in the light most favorable to the party asserting the inquiry, [] the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Pursuant to this inquiry, courts have been cautioned not to define "the right in overly general terms" because doing so would "strip the qualified immunity defense of all meaning." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 58 (D.D.C. 2003) (citing *Butera v. District of Columbia*, 235 F.3d 637, 646 & n.3 (D.C. Cir. 2001)). Assuming the court has found that the plaintiff has been deprived of an actual constitutional right, the second part of the inquiry requires a court to examine whether this right was "clearly established" at the time of the deprivation such that a reasonable officer would have been aware that his conduct was unlawful. *Saucier*, 533 U.S. at 202. Pursuant to this inquiry, "[b]are allegations of malice should not suffice to subject

government officials either to the costs of trial or to the burdens of broad reaching discovery."
*Harlow*, 457 at 817-18.

Krieger argues that Defendant Allen violated his First Amendment rights by coercing
Treibitz not to participate in his planned speech to the AIA in February 1990.  According to
Krieger, "the cancellation of Mr. Treibitz's participation injured Plaintiff's First Amendment
rights of freedom of speech and association and that these were clearly established at the time
. . . ."[17]  Pl.'s Opp'n to Defs' Mot. to Dismiss or for Summ. J. at 16.  Krieger's claim fails for the
following two reasons.

First, on a Motion for Summary Judgment, Krieger bears the burden of setting forth
sufficient evidence of each element of his claim showing that there is a genuine issue of material
fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (holding that a party opposing a
Motion for Summary Judgment must "go beyond the pleadings and by [its] own affidavits, or by
the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts
showing that there is a genuine issue for trial'").  In this regard, the evidence in the record
indicates that Allen had a conversation with Treibitz concerning the Delta video, which he
described in a subsequent email:  "while I didn't like this [making a laser disc of the Delta
video], I could not think of a way to stop what [Krieger] is proposing to do so long as it was
essentially the same as Fred Schmuck walking in with a FOIA-obtained videotape from the disc

---

[17] Krieger also briefly references a presentation he was scheduled to give to the
Association of Trial Lawyers of America in 1989.  *See* Pl.'s Opp'n to Defs' Mot. to Dismiss or
for Summ. J. at 7.  Krieger's presentation was subsequently cancelled, and Fadely was selected to
appear as a presenter.  *Id.*  The organization told Krieger it preferred having a presenter who was
a DOJ official.  *Id.*  Krieger provides no argument, legal or factual, that his *Bivens* claim against
Allen is based on this cancelled speech.

and saying 'Make me a demo disc.'" *See* Defs.' Mot. to Dismiss or for Summ. J. Ex. B at 9

(Email from Allen to unknown recipient dated Jan. 22, 1990).  Treibitz reportedly responded

"that's all it would be."  *Id.*  Although Krieger relies on this conversation as evidence that Allen

coerced Treibitz into withdrawing as a co-presenter, *at most* it shows that Allen did not want the

Delta video laser disc to be made for Krieger.  Despite that preference, however, Allen

acquiesced to Krieger's receiving the video disc, and expressed the same to both Treibitz and

Krieger.  *See* Second Allen Decl. ¶ 13.  This evidence cannot support Krieger's claim that Allen

"coerced" Treibitz into withdrawing as a co-presenter.  Perhaps recognizing the scarcity of the

evidence on which he relies, Krieger argues that Defendants "have failed . . . to even suggest a

plausible alternative explanation for the actions of Mr. Treibitz under the circumstances."  Pl.'s

Opp'n to Defs' Mot to Dismiss or for Summ. J. at 19.  That argument seeks to improperly shift

Krieger's burden to come forward with evidence supporting his claim to Defendants, which the

Court shall not permit.[18]

Second, even if Krieger set forth sufficient evidence supporting his claim that Allen

coerced Treibitz into withdrawing as a co-presenter (which the Court expressly finds is not the

case), Krieger has still failed to set forth evidence that Allen obstructed Krieger's First

Amendment rights.  Both Parties argue that, by analogy, the question to consider is whether

---

[18] Krieger also asserts that additional discovery could reveal evidence of coercion not
already present in the record.  *See* Pl.'s Opp'n to Defs' Mot. to Dismiss or for Summ. J. at 20.
Discovery in this case was extensive and it has long-since closed.  *See* Order dated May 13, 2004
("Plaintiff has already had ample time for discovery in this suit").  The Court has granted leave to
Krieger to amend his Complaint multiple times, including for the express purpose of amending
the Complaint to account for the information produced in discovery.  *See* [72] Mot. to Am.
Compl. & Ex. 1 (Second Am. Compl.).  Krieger must now support his claims with evidence
rather than continue to point to some future hope that such evidence will some day materialize.

Allen's conduct would violate the "ordinary firmness" standard that has been discussed by the D.C. Circuit and other courts.  *See* Defs' Mot. to Dismiss or for Summ. J. at 19; Pl.'s Opp'n at 23.  Pursuant to this standard, to assess whether harassment for exercising the right of free speech is actionable, the inquiry must focus on "whether the harassment is [likely] 'to deter a person of ordinary firmness from that exercise.'"  *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002) (quoting *Crawford-El v. Britton*, 93 F.3d 813, 826 (D.C. Cir. 1996)).  Under this inquiry, "'where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech.'"  *Hatfill v. Ashcroft, et al.*, 404 F. Supp. 2d 104, 117 (D.D.C. 2005) (quoting *Curley v. Village of Suffern*, 268 F. 3d 65, 73 (2d Cir. 2001)).  Krieger's claim fails under this standard because the record indicates that he appeared as the keynote speaker at the AIA conference as planned (and used the Delta video on laser disc as he had planned), despite Treibitz's absence.  *See Hatfill*, 404 F. Supp. 2d at 119 (finding no First Amendment violation occurred where plaintiff continued to exercise his First Amendment right to comment on an investigation and seek redress for alleged wrongs committed during the course of the investigation); *Dodge v. Trustees of the Nat'l Gallery of Art, et al.*, 326 F. Supp. 2d 1, 16 (D.D.C. 2004) (finding no First Amendment violation where, despite allegations of retaliation against plaintiff, there was no evidence that defendant interfered with plaintiff's right to petition the government).  At most, Krieger has set forth a set of unsupported facts which, if true, assert a claim that *Treibitz's* First Amendment rights had been violated, not Krieger's rights, as Krieger was not subject to any alleged coercion.  *See Conn. v. Gabbert*, 526 U.S. 286, 292-93 ("the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties").

For these reasons, the Court finds that Krieger was not subject to a clear deprivation of his First Amendment rights that would nullify the qualified immunity enjoyed by Allen, and accordingly, the Court shall grant Defendants' Motion for Summary Judgment as to this claim.

C.     *Motion for Leave to Amend*

Krieger's original Complaint asserted that the United States negligently "failed to supervise" Fadely, who invaded his privacy, inflicted emotional distress upon him, misrepresented information about him, and damaged his professional reputation resulting in loss of employment and income.  *See* Compl. ¶ 70.  The Court dismissed the claim as barred by 28 U.S.C. § 2676, which retains the United States' immunity from suit with respect to any claim "arising out of" various intentional torts.  *See* Mem. Op. dated August 8, 1999 at 4.  That holding was affirmed by the D.C. Circuit, but the case was remanded as to Krieger's Privacy Act claim. *See Krieger v. Fadely*, *et al.*, 211 F.3d 134 (D.C. Cir. 2000).

On remand, Krieger sought to amend his Complaint to assert a negligence claim arising out of the actions of both Fadely and Allen.  In the Court's Order and Opinion of March 30, 2002, the Court held that the claim against Fadely was subject to *res judicata*, but acknowledged that the analysis was somewhat different with respect to Krieger's amended claim for "negligent loss/destruction of records and spoliation of evidence, along with a claim for negligent supervision and management of Defendant Allen."  Order and Mem. Op. at 7.  The Court indicated that it would rule on Defendants' arguments concerning the amended claim after the Attorney General decided whether to certify that Allen was acting within the scope of his employment.  *Id.* at 7-8.  At that time, the Court noted that "[f]rom the Court's reading of Plaintiff's Opposition, if Defendant Allen is certified, much, or all, of Plaintiff's new Count IX

would be eliminated." *Id.*

Following the Attorney General's certification that Allen was acting in his official

capacity, Defendants filed a renewed Opposition to Plaintiff's Motion to Amend on July 19,

2002. Krieger filed his Response on October 7, 2002. On June 24, 2004, Krieger filed a Motion

to Decertify Defendant Allen, arguing that Allen was not acting within the scope of his employment

when he worked on the DOJ Press Release described above and when he communicated with

Treibitz in 1990 regarding Krieger's request for a Delta video laser disc. *See* Pl.'s [118] Mot. to

Decertify. The Court denied Krieger's Motion on March 8, 2005, finding that his position was

"untenable," and that "[i]n light of the fact that Allen had 'national supervisory authority over all

aviation and admiralty related FTCA litigation, Allen's work on an agency press release

addressing a judicial determination that the United States was not liable for a plane crash clearly

meets the relevant criteria." [126] Mem. Op. at 12 (citation omitted). The Court further found

that there was no "evidence in Plaintiff's factual assertions that would indicate that any actions

undertaken by Defendant Allen with respect to the use of a computer animation, paid for and

developed in the course of government litigation for which Allen was responsible, would fall

outside of the scope of Allen's employment." *Id.* at 13.

Having considered the Parties' submissions as they relate to the amendment of Count IX

and having found Allen properly certified as acting within the scope of his employment, the

Court now holds that Krieger's Motion to Amend should be denied because the amended claim

asserting negligence against the United States is futile. *See Firestone*, 76 F.3d 1205, 1208 (D.C.

Cir. 1996) ("[a]lthough the grant or denial of leave to amend is committed to a district court's

discretion, it is an abuse of discretion to deny leave to amend unless there is sufficient reason,

such as 'undue delay, bad faith or dilatory motive . . . repeated failure to cure deficiencies by [previous] amendments . . . [or] futility of amendment'") (quoting *Foman*, 371 U.S. 178,182 (1962)).  Krieger's claim against the United States based on its failure to supervise Allen is barred by the intentional tort exception of the FTCA because the harm Krieger alleges that he suffered was caused by the intentional acts of Allen occurring within the scope of his employment, and not by the negligence of the United States (just as the Court held with respect to Fadley), and the destroyed records that Krieger identifies would not have aided his claim, either factually or legally, thus depriving Krieger of an essential element of his claim under the law of the District of Columbia.

### 1.   Failure to supervise

Defendants argue that Krieger's claim against the United States for negligently failing to supervise Allen is subject to *res judicata*.  The Court disagrees.  Collateral estoppel prevents re-litigation of issues where (1) the same issues were litigated, that is, contested by the parties and submitted for determination by the court, (2) the issues were actually and necessarily determined by a court of competent jurisdiction, and (3) where preclusion would not work a fundamental "unfairness" in the second trial.  *Otherson v. Dep't of Justice*, 711 F.2d 267, 273 (D.C. Cir. 1983).  The Court previously dismissed Krieger's claim against the United States for negligently failing to supervise Fadely as she allegedly defamed Krieger or otherwise interfered with his contract rights.  *See* Mem. Op. dated August 8, 1999 at 5.  Here, in contrast, Krieger has brought a claim alleging that the United States negligently failed to supervise Allen as he allegedly interfered with a speech Krieger was scheduled to present with Treibitz.  As this claim arises out of a different set of facts (occurring approximately 3 years apart) involving different government

48

employees, this claim has not been litigated and submitted to the Court for decision.

Even though the claim may not be subject to *res judicata*, the claim must still comply with the provisions of the FTCA.  As discussed above, the United States is immune from suit under the FTCA absent an express waiver of its sovereign immunity.  *See United States v. Testan*, 424 U.S. 392, 399 (1976).  The government has waived its immunity for negligent acts of government employees acting within the scope of their employment, *see* 28 U.S.C. § 1346(b), but it has not waived its immunity for intentional torts (such as libel, slander, or interference with contract rights), *id.* § 2680(h) (commonly referred to as the "intentional tort exception").  The D.C. Circuit has held that an intentional tort arising out of negligent supervision by the government is still subject to the intentional tort exception despite a claim of negligence.  *See Kugel v. United States*, 947 F.2d 1504, 1507 & n.2.

Applying this framework to the claim as it related to Fadely, the Court in its August 8, 1999 Memorandum Opinion scrutinized Krieger's tort claim and concluded that the injury alleged to have occurred was caused by Fadely's representations to Adler, not by the negligence of the government.  *See* [20] Mem. Op. at 10.  The same reasoning applies to Krieger's amended claim against Allen, which merely recasts the same types of allegations against Allen that had been leveled against Fadely.  In *Kugel*, the D.C. Circuit found that the plaintiff's alleged harm was not caused by "the FBI's negligent execution of the investigation" but was instead caused by the "dissemination of information associated with the investigation."  947 F.2d at 1507.  The same construct is present in this case – the harm allegedly suffered by Krieger was the result of Allen's statements to Treibitz occurring within the scope of his employment, and not caused by the government's negligence.  Accordingly, the Court shall deny Krieger's request to amend his

49

Complaint to assert a negligence claim against the government for failure to supervise Allen.

    2.    <u>Destruction of Evidence</u>

Krieger's final claim does not require extended discussion.  Krieger argues that the loss or destruction of his PARs and of pre-1993 DOJ email tapes constitutes a tort for spoliation of evidence under District of Columbia law.  The FTCA provides that the Government waives sovereign immunity under that Act for suits by private citizens sounding in tort only "under circumstances where the United States, if a private person, would be liable to claimant in accordance with the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b). Both Parties agree that D.C. law applies to this claim, and both argue that *Holmes v. Amerex Rent-a-Car*, 710 A.2d 846, 848-54 (D.C. 1998), supports their respective positions.  That decision held that in order to demonstrate causation for the tort of spoliation, a plaintiff must "demonstrate that (1) the underlying claim was significantly impaired due to the spoliation of evidence; (2) a proximate relationship exists between the projected failure of success in the underlying action and the unavailability of the destroyed evidence; and (3) that the underlying lawsuit would enjoy a significant possibility of success if the spoliated evidence were still in existence."  *Id.* at 853.  In the present case, Krieger cannot meet his burden with respect to any of these elements.  The alleged spoliated evidence, his PARs and the pre-1993 emails, could not have factually or legally aided any of Krieger's claims for the reasons thoroughly explored above. *See* sections III.A.1, A.2, & n.9, *supra*.  Accordingly, the Court shall deny Krieger's request for leave to amend count IX of his Complaint.

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT IN PART Defendants' [83]

Motion for Summary Judgment, holding the Motion in abeyance with respect to the claim

brought under section 552a(e)(7) of the Privacy Act pending further briefing from the Parties,

GRANT Defendants' [96] Motion to Dismiss, or in the alternative, Motion for Summary

Judgment, and DENY Plaintiff's [72] Motion for Leave to Amend his Complaint.


Date:    January 7, 2008


                                                 _/s/_____
                                                 COLLEEN KOLLAR-KOTELLY
                                                 United States District Judge